ADAMS *v.* MERCHANTS & PLANTERS BANK & TRUST CO.

5-882                                                288 S. W. 2d 35

Opinion delivered March 19, 1956.

*W. H. Glover, Lawson E. Glover* and *John H. Wright,* for appellant.

*McMillan & McMillan,* for appellee.

GEORGE ROSE SMITH, J.   In 1954 the appellee, with the approval of the city council, erected a permanent structure, called a curb teller, on the sidewalk in front of its bank building in Arkadelphia.   Suits to require the removal of this structure were brought by Mrs. J. J. Adams, who owns three buildings fronting on Main Street just east of the bank, and by Mr. and Mrs. Bryan Allen, who rent from Mrs. Adams the store building next door to the bank.   The cases were consolidated for trial.   The chancellor awarded the Allens a judgment for $500 as damages suffered by them during the construction of the curb teller, but in other respects the complaints were dismissed upon the ground that the plaintiffs had failed to prove special injuries not suffered by the public in general.   Both the plaintiffs and the defendant have appealed.

The original sidewalk in the block in question is almost twelve feet wide.   The teller is a rectangular concrete building that extends along the curbing for ten feet and that is about seven feet in width, leaving a five-foot passageway for pedestrians.   This passageway is covered by a roof connecting the teller with the main bank building.   During business hours the structure is occupied by a bank employee, who does busi-

ness with motorists by means of a window at the curbing and with pedestrians by means of a window at the end of the curb teller.

It is conceded that the governing law has long been settled. The city holds the streets and sidewalks as a trustee and cannot permanently divert them to a public or private use foreign to the purpose of the original dedication. Nevertheless the city has power to permit an encroachment — temporary in the sense that the city's permission may be withdrawn — which does not necessarily interfere with the public's use of the thoroughfare. Such an encroachment, however, may be abated upon complaint by anyone suffering special damages not common to the public at large. *Packet Co.* v. *Sorrels,* 50 Ark. 466, 8 S. W. 683; *Osceola* v. *Haynie,* 147 Ark. 290, 227 S. W. 407; *State ex rel. Latta* v. *Marianna,* 183 Ark. 927, 39 S. W. 2d 301. The controlling issue here is whether the appellants have been peculiarly hurt by the presence of the curb teller.

The evidence on this point preponderates in favor of the plaintiffs. Mr. and Mrs. Allen run an automobile supply store in the building they rent from Mrs. Adams. Their records show that after the construction of the teller was begun in August, 1954, their volume of sales declined as compared to the corresponding months of the year before. The Allens increased their advertising and began selling television sets in an unsuccessful effort to improve their sales. They both testify that if the curb teller remains they will be forced to find a new location unless their rent is reduced.

M. C. Elliott, who was formerly Mrs. Adams' tenant in the store next to the Allens, has already moved to a new location. Elliott's dry goods business declined when work began on the teller. He countered by expanding his piece-goods department, but that was the only one of his five departments that did not show a loss as compared to the preceding year. After the curb teller was installed Elliott abandoned negotiations for a renewal of his lease with Mrs. Adams and moved elsewhere, at an estimated expense of $3,500. There were

admittedly other factors that influenced his decision, but there is no reason to doubt his assertion that the presence of the teller was ''a prime reason'' for his departure.

It is admitted by all the informed witnesses that the rental value of a retail store site is directly related to the volume of pedestrian traffic passing by the premises. Both the Allens testify that such traffic has fallen off noticeably since the construction of the teller; people prefer to walk on the other side of the street. This view is strongly confirmed by the photographs in the record. The teller and its roof have reduced the sidewalk to what is in substance a tunnel five feet in width. When couples coming from opposite directions meet in this narrow lane they must pass in single file instead of abreast. The chancellor regarded this testimony as conjectural and suggested that a traffic count would be needed to prove the exact volume of foot traffic. The trouble is that such a count would be useless in the absence of a similar enumeration taken before the teller was built. The Allens' observations were competent testimony, and they should not be penalized for their failure to obtain more precise proof before a cause of action was known to exist.

We need not detail all the evidence offered by the appellants. Two expert witnesses testified that the teller has depreciated the value of Mrs. Adams' property by a fourth; similar witnesses for the defense thought the value to be unaffected. There is some slight evidence that the teller obstructs the passage of light and air and tends to obscure the view of the Allens' window displays. Another grievance is that street space formerly used as a bus-stop is now reserved for the bank's vehicular customers.

The appellee's proof falls decidedly short of overcoming the persuasive case made by the plaintiffs. The evidence of reduced pedestrian traffic is practically uncontradicted. Much of the defendant's testimony is devoted to showing that in 1954 there was a general decline in business conditions in Arkadelphia, as the result

of a drought and of the completion of a large construction project in the vicinity. It is doubtless true that depressed business conditions contributed to the predicament of Mrs. Adams' tenants, but the evidence indicates that the existence of the curb teller was also a definite factor.

By the nature of the case it is impossible either to prove or to disprove the extent of the appellants' damage with mathematical exactness. That, however, is not the basic issue; the question is whether the appellants have suffered an injury not shared by the general public. It is of course not contended that the obstruction of more than half the sidewalk in a business district is beneficial to neighboring retailers. In view of the proof that the pedestrian traffic has declined, that real estate values have been adversely affected, that the volume of sales has decreased, that Mrs. Adams has already lost one tenant and risks the loss of another, we cannot conscientiously say that the appellants have been no more affected than anyone else by the appellee's use of the public sidewalk for private profit.

On the cross appeal the appellee contends that the proof does not support the chancellor's finding of fact that the Allens were pecuniarily damaged by the almost complete obstruction of the sidewalk during the months that the teller was being built. We do not think the chancellor's conclusion on this issue of fact to be against the weight of the evidence.

Reversed on direct appeal and remanded for the entry of a decree requiring the removal of the curb teller; affirmed on cross appeal.